IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BLUE CROSS BLUE SHIELD OF ]
WISCONSIN, ]
 ]
    Plaintiff, ]
 ] CV-02-BE-2287-S
vs. ]
 ]
VICTOREE BROTHERS, ]
 ]
    Defendant. ]
 ]

**MEMORANDUM OPINION**

**I. INTRODUCTION**

    This case is before the court on a motion for summary judgment (doc. # 8) filed by plaintiff Blue Cross Blue Shield of Wisconsin ("BCBS"), as fiduciary of the group insurance plan for employees of Harley-Davidson Motor Group, Inc. ("Plan"). BCBS instituted this lawsuit against Victoree Brothers ("Brothers"), a Harley-Davidson employee and plan participant, under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3). BCBS seeks enforcement of the Plan's subrogation provision to recoup $35,764.56 in medical benefits paid to Brothers after he was injured in a motorcycle accident. As compensation for injuries sustained in the motorcycle accident, plaintiff received approximately $80,000 in settlement proceeds from his uninsured/underinsured ("UN/UIM") automobile insurance carrier, Progressive

Insurance Company ("Progressive"). For the reasons stated below, the plaintiff's motion for summary judgment is DENIED, summary judgment is GRANTED to the defendant on all the plaintiff's claims, and this case is DISMISSED as a matter of law.

In its complaint, BCBS seeks enforcement of the subrogation provision of the Plan, alleging that it is entitled to "restitution, imposition of a constructive trust, and declaration of rights under the Plan, against the defendant for the monies contained in the trust to enforce ERISA and the terms of the Plan."[1] Pending resolution of this dispute, the funds at issue in this case are being held in trust by defense counsel. Neither party contends that any portion of the monies held in trust has been disbursed to Brothers, or that the defendant does not have a pecuniary interest in the monies contained in the trust.

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases when no genuine issues of material fact are presented and when the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In this case, neither party disputes the facts, and consequently, the question is whether the plaintiff is entitled to judgment as a matter of law. A court may also enter summary judgment, *sua sponte,* in favor of a party opposing summary judgment, even if that party has not made a formal cross-motion for summary judgment, when the issues have been fully briefed. See *Celotex,* 477 U.S. at 326; *Artistic Entm't v. City of Warner Robbins*, 331 F.3d 1196, 1201-02 (11th Cir. 2003); 10A Charles Alan Wright, Arthur R. Miller, Mary

---

[1] *See* doc. # 1.

2

Kay Kane, *Federal Practice and Procedure* § 2720, at 28-34 (2d ed.1983). The Eleventh Circuit has cautioned that the notice provisions under Rule 56(c) "retain their mandatory character even when the . . . court contemplates awarding summary judgment *sua sponte* against a party that itself had moved for summary judgment." *Massey v. Congress Life Ins. Co.,* 116 F.3d 1414, 1417-18 (11th Cir. 1997). However, the grant of a *sua sponte* motion for summary judgment is permissible even where there is no formal notice in compliance with Fed. R. Civ. P. 56(c) when (1) purely legal issues are involved; (2) the evidentiary record is complete; and (3) the parties have been given the opportunity to respond to such a motion. *Burton v. City of Belle Glade,* 178 F.3d 1175, 1204 (11th Cir. 1999).

In its motion for summary judgment, BCBS argues that the the Supreme Court's holding in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), recognizes that attempts to enforce a Plan's reimbursement provision constitute "other appropriate equitable relief" available under 29 U.S.C. § 1132(a)(3) when the monies at issue are clearly identifiable monies, traceable to a settlement received by an ERISA plan participant, and not in the plan participant's possession. Plaintiff urges the court to adopt the reasoning of courts from other jurisdictions that hold that, to assert a cognizable claim for equitable relief under 29 U.S.C. § 1132(a)(3)(B), an ERISA fiduciary need only demonstrate that the funds sought by the ERISA fiduciary be (1) identifiable monies, (2) in the defendant's possession, and (3) clearly traceable to an award from a third-party to which the plaintiff claims an entitlement. In opposition to the defendant's alternate

argument, the plaintiff argues that the unambiguous terms of the Plan establish a first dollar subrogation interest over the above-referenced settlement proceeds, regardless of whether the settlement proceeds are characterized as payment for medical expenses or physical injuries.

To the contrary, defendant argues that the Supreme Court's holding in *Knudson* definitively establishes that BCBS's lawsuit for reimbursement/subrogation pursuant to the Plan provision at issue in this case is a claim for legal relief, and thus, not authorized pursuant to 29 U.S.C. § 1132(a)(3). As an alternate argument, Brothers characterizes the settlement proceeds as compensation for physical injuries and argues that the only claim BCBS has is for "medical claims that . . . Brothers would have against his UN/UIM coverage provision or against the medical pay provisions of his policy."

The court has carefully reviewed the motion, the briefs filed in support of and in opposition to the motion, the supporting and opposing evidentiary materials, and the arguments made by counsel at the May 4, 2004 hearing on the motion for summary judgment. Based upon these considerations, the court concludes that the Supreme Court's decision in *Knudson* dictates that the plaintiff's motion for summary judgment be DENIED because the relief sought by the plaintiff does not fall within the ambit of "other appropriate equitable relief" authorized by 29 U.S.C. § 1139(a)(3). Furthermore, because of the court's conclusion that the type of relief requested by the plaintiff in this case is not the type of relief authorized by 29 U.S.C. § 132(a)(3), the relatively straightforward and

undisputed nature of the facts at issue in this case, and the extensive briefing by both parties of the salient legal issues, the court concludes that it is appropriate to *sua sponte* grant summary judgment in favor of the defendant. Accordingly, this case is due to be DISMISSED as a matter of law pursuant to Fed. R. Civ. P. 56.

## II. DISCUSSION[2]

ERISA, a " 'comprehensive and reticulated statute' which Congress adopted after careful study of private retirement pension plans," governs the actions of employee benefit plans and prescribes remedies for violations of plan provisions. *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 510 (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.,* 446 U.S. 359, 361(1980)). As an ERISA fiduciary, BCBS only has standing to sue for equitable relief under the provisions of 29 U.S.C. §1132(a)(3). This section provides that a civil action may be brought by an ERISA fiduciary:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

(emphasis added). The above-referenced statutory provision has been interpreted as limiting fiduciaries to equitable relief to enforce alleged violations of ERISA employee welfare benefit plans. *Knudson*, 534 U.S. 220-221.

---

[2]Based on the lengthy and through presentation of the facts in the parties' briefs and their relatively straightforward and undisputed nature, the court does not include a detailed recitation of the facts in this Memorandum Opinion.

Although the language of the statute is relatively straightforward, interpreting the meaning of the phrase "appropriate equitable relief," is anything but straightforward. Motivated by concern that ERISA's enforcement scheme not be extended to remedies not explicitly authorized in its text, the Supreme Court has strictly construed the phrase, interpreting it to mean "those categories of relief that were typically available in equity." *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993). The nature of the equitable relief authorized under 29 U.S.C. § 1132(a)(3) was again addressed by the Supreme Court in *Knudson*. In that case, the Court held that the relief requested by the petitioner, which the Court characterized as imposition of personal liability pursuant to a contractual obligation to pay, was not the type of relief typically available in equity. *Knudson*, 534 U.S. at 213-214.³

At issue in *Knudson* was whether the defendant, who had been injured in a car accident, was required to reimburse the plan for medical benefits paid on the defendant's behalf. *Knudson*, 534 U.S. at 208-209. Pursuant to an agreement, the ERISA plan in that case assigned Great West its right to litigate or negotiate the issue of recovery pursuant to the Plan's reimbursement provision. *Knudson*, 534 U.S. at 208-209.

The Court rejected Great West's characterization of its request for restitution as the

---

³In that case, Janette Knudson was rendered a quadriplegic by a car accident. Great-West paid $411,157.11 in medical expenses arising from the accident. Ms. Knudson filed a tort action arising out of the car accident against Hyundai Motor Company and eventually negotiated an $650,000 settlement. Only $13,828.70, the portion of the settlement attributable to past medical expenses, was allocated in satisfaction of Great-West's claim under the Plan's reimbursement provision.

type of relief typically available in equity. Specifically, the Court reasoned that not all claims for restitution are equitable in nature and distinguished between equitable restitution, which involves a constructive trust or equitable lien "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession," and restitution at law, "which involves the imposition of personal liability for benefits conferred upon the respondents" that is analogous to a breach of contract claim. *Knudson*, 534 U.S. at 212-213. In further characterizing the nature of Great-West's claim, the court also explained that "for restitution to lie in equity, the action generally *must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.*" *Knudson*, 534 U.S. at 214 (emphasis added). In short, the Court's holding in *Knudson* definitively establishes that only restitution that can be characterized as typically equitable, as opposed to legal, is the type of relief authorized under 29 U.S.C. § 1132(a)(3).

Given the above-referenced analytical framework, the threshold issue in this case is whether BCBS's request for reimbursement under the Plan falls within the ambit of "other appropriate equitable relief" authorized by 29 U.S.C. § 1139(a)(3). More specifically, does the plaintiff's complaint, essentially petitioning the court to enforce the terms of the Plan's subrogation provision through the guise of the imposition of a constructive trust, trigger the type of equitable relief contemplated under ERISA?

Post *Knudson*, courts grappling with the issue of characterizing a plan fiduciary's

attempt to compel the enforcement of a reimbursement provision as legal or equitable have taken two differing approaches. Under the first approach, the one advanced by the plaintiff in this case, the characterization of the fiduciary's attempt to compel the enforcement of the Plan's reimbursement provision hinges on whether the plan participant is in actual or constructive possession of the disputed funds. Consequently, attempts by an ERISA fiduciary to recover settlement proceeds to which it claims entitlement under a reimbursement provision are only prohibited under 29 U.S.C. § 1132(a)(3) if the plan beneficiary is not in the possession of clearly identifiable proceeds. *See e.g., Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot, and Wansbrough,* 354 F.3d 348, 355 (5th Cir. 2003); *Great-West Life & Annuity Ins. Co. v. Brown*, 192 F. Supp. 2d 1376, 1381 (M.D. Ga. 2002).

Under the second approach, the one impliedly advanced by the defendant, the characterization of the relief turns on whether the substance of the requested relief is the type of relief typically available in equity, and not on the location of the disputed funds. *See Westaff (USA) v. Arce*, 298 F.3d 1164, 1167 (9th Cir. 2002).

The court is not aware of and the parties have not directed the court to any Eleventh Circuit Court of Appeals case that has definitively endorsed a preference for either of the above-referenced approaches. However, at least two district court cases in this circuit endorse the first approach that categorizes the relief as legal or equitable based on whether the funds at issue in the case are clearly identifiable and in the defendant's actual or

constructive possession. *See Admin. Comm. v. Brown*, No. 5:01-CV-26-C, 2003 WL 23213577,at *4 (M.D. Ga. May 9, 2003) and *Great-West Life & Annuity Ins. Co. v. Brown*, 192 F. Supp. 2d 1376 (M.D. Ga. 2002).

As a preliminary matter, the court rejects the plaintiff's argument that, to trigger the provisions of 29 U.S.C. § 1139(a)(3), an ERISA fiduciary need only demonstrate that the funds at issue be identifiable, in the defendant's possession, and clearly traceable to an award from a third-party because the funds at issue in *Knudson* were not in the defendant's actual or constructive possession. Consequently, the issue of whether possession is the linchpin of the inquiry as to what is proper equitable relief under 29 U.S.C. § 1139(a)(3) was not before the Court in *Knudson*. 534 U.S. at 213. Therefore, any statement concerning funds in a beneficiary's actual or constructive possession was not a holding by the court, but *dictum*. Expressions in court's opinion which go beyond the facts before court and therefore, are dictum not binding in subsequent cases as legal precedent. *See Hamilton ex rel Hamilton v. Cannon*, 80 F.3d 1525, 1530 (11th Cir. 1996) (defining dicta as those parts of a decision that are not essential to the court's holding).

Having rejected the plaintiff's interpretation of *Knudson's* holding, the court next turns to the issue of whether the relief requested by BCBS is appropriate equitable relief of the <u>kind typically available in equity</u>. Based on its analysis of the complaint and the nature of the relief requested by the plaintiff, the court concludes that the nature of the relief sought by BCBS is not "other appropriate equitable relief" as defined in 29 U.S.C. §

9

1132(a)(3).

BCBS couches its request for relief in terms of imposition of a "constructive trust" that is normally an equitable remedy. Under traditional equitable principles, equity may impose a constructive trust on property in favor of a person beneficially entitled to it in situations where another party holds title through fraud, commission of a wrong, or unconscionable conduct. *Beasley v. Mellon Fin. Servs. Corp.*, 569 So. 2d 389 (Ala. 1990). However, in this case, Brother's possession of the settlement proceeds is neither fraudulent, wrongful, nor unconscionable.

Furthermore, traditional principles of equitable subrogation arise out of a relationship that need not be contractual, and thus, is effective by operation of law. *Powell v. Blue Cross & Blue Shield of Alabama*, 581 So. 2d 772, 775 (Ala. 1990). In stark contrast, conventional subrogation, which the court finds to be essentially legal in nature, primarily arises based on contractual rights. *See Continental Bank & Trust Co. v. Alabama Gen. Ins. Co.*, 150 So. 2d 688, 690 (Ala. 1963) (explaining that conventional subrogation is grounded upon a lawful contract between the parties). Given the above-referenced distinction, the court concludes that the nature of the relief requested by BCBS is more akin to conventional subrogation because it rests in a contractual right, not upon equitable considerations.

Lastly, the nature of the type of relief requested by BCBS cannot be alternatively characterized as restitution because restitution is available only against "[a] person who has

been unjustly enriched at the expense of another." Restatement (First) of Restitution § 1 (1937). *See also*, cmt. c ("Even where a person has received a benefit from another, he is liable to pay therefor <u>only</u> if the circumstances of its receipt or retention are such that, as between two persons, it is unjust for him to retain it.") (emphasis added); *First Nat'l Life Ins. Co. v. Sunshine-Jr. Food Stores, Inc.*, 960 F.2d 1546, 1553 (11th Cir. 1992) ("Restitution is an equitable remedy designed to restore to a plaintiff something of value that is wrongfully in the possession of another.").

In this case, the funds sought by BCBS from Brothers were settlement funds paid in compensation to him for injuries received in a motorcycle accident. Consequently, the court is not convinced that Brother's retention of the settlement money is tantamount to unjust enrichment that compels the imposition of a constructive trust under equitable principles.

Instead, the court is of the opinion that BCBS has not established its entitlement to restitution notwithstanding the language of the Plan establishing its contractual right to full reimbursement and abrogating the application of the "make whole" and "common fund" doctrines. This result follows because restitution as a remedy for unjust enrichment arises in equity and is, therefore, wholly separate from the contractual rights and duties of the parties. *Cf., Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp., ITT*, 139 F.3d 1396, 1413 (11th Cir. 1998) ("Recovery on a theory of unjust enrichment, however, is only available 'when as a matter of fact there is no legal contract.'"). In other words, the court

11

finds that the <u>only</u> basis for BCBS's claim to the settlement proceeds is a legal one based on the contractual provisions of the Plan documents, and not based on "appropriate equitable relief."

Based on the foregoing equitable principles and on a careful reading of *Knudson*, the court adopts the approach utilized and adopted by the Ninth Circuit. Consequently, the court concludes that, although the monies paid to Brothers by Progressive are clearly identifiable monies traceable to an award from a third-party over which the defendant has constructive possession,[4] the substance of BCBS's requested relief essentially seeks to impose personal liability on the defendant via the enforcement of the Plan's contractual subrogation provision. *See Knudson*, 534 U.S. at 214 (holding that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.").

Although plaintiff uses terms like "restitution" and "constructive trust" in its complaint, BCBS seeks to enforce a contractual obligation to compel the payment of money pursuant to the reimbursement provision contained in the Plan. As the Supreme Court explained in *Knudson*, "[t]he basis for petitioners' claim is . . . that . . . they are contractually entitled to *some* funds for the benefits that they conferred. The kind of restitution that petitioners seek therefore, is not equitable . . . but legal– the imposition of personal liability for the benefits that they conferred upon respondents." *Knudson*, 534

---

[4] Neither party disputes that the $35,764.56 held in trust by defense counsel is traceable to settlement proceeds from Progressive.

U.S. at 204 (emphasis in the original). Accordingly, the type of relief requested by BCBS is essentially legal restitution, and thus, not available to ERISA fiduciaries under 29 U.S.C. §1132(a)(3).

### III. CONCLUSION

Based on the foregoing analysis, the court concludes that the plaintiff's motion for summary judgment (doc. #9) is due to be DENIED and that this case is due to be DISMISSED as a matter of law pursuant to Fed. R. Civ. P. 56.

A separate, final order will be entered.

DONE and ORDERED this 28th day of May, 2004.

KARON O. BOWDRE
UNITED STATES DISTRICT JUDGE